UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES C. MESELSOHN, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JEFFREY G. LERMAN and <br> JEFFREY G. LERMAN, P.C., <br><br> Defendants. | No. <br> CV-06-4115 (ADS)(AKT) <br><br><br> CLASS ACTION |

Plaintiff's Memorandum in Support of Final Approval of Class Settlement and Approval of Attorney Fees and Costs and Award to Representative Plaintiff

I.  Introduction

In accordance with the Court's Order, dated March 31, 2009, granting preliminary approval of a class settlement, the Settlement Administrator mailed 81,755 notices describing the settlement terms to New York State residents.[1] As of July 17, 2009 a total of 2,384 consumers have submitted claim forms seeking to share in the class recovery.[2] There have been no objections.

---

[1] *See* accompanying Affidavit of Michael Caines regarding Mailing of Class Notice, sworn on July 22, 2009.

[2] *Id*. The total of 2,384 includes 2,285 claims marked valid by the Administrator and 99 timely returns that are still under review. These 99 claims, which Plaintiff believes should be counted as valid, will be discussed further below.

1

Plaintiff James C. Meselsohn submits this brief in support of final approval, and in support of his application for class counsel fees and costs and a modest individual award.

## II. Brief History of the Case – Procedural Background

On August 18, 2006, James C. Meselsohn filed a class complaint on behalf of himself and a class of consumers (collectively "Plaintiffs") against Jeffrey G. Lerman and Jeffrey G. Lerman, P.C. (collectively "Defendants") alleging that certain debt-collection letters Defendants sent to consumers overshadowed the required language of the Fair Debt Collection Practices Act by demanding payment before the expiration of the 30-day validation period.

Under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692g, debt-collectors are required to include validation notice with the initial communication with the consumer, or send it within five days of the initial communication. This notice is intended to advise the consumer as to certain federal rights in connection with the procedure under which a consumer may dispute a debt, request verification of a debt, or obtain certain information about the creditor within 30 days of an initial communication from a debt-collector.[3] Under federal law, this validation notice must be effectively communicated and it must not be overshadowed, confounded or diluted as seen from the perspective of the "least

---

[3] 15 U.S.C. § 1692g.

sophisticated consumer."[4] In a class action under the FDCPA, a successful class may recover certain statutory damages separate and apart from any alleged actual damages.[5] Plaintiff in this case only seeks statutory damages.

After considerable motion practice, the parties, through counsel, engaged in lengthy settlement discussions. This included a conference with the magistrate. These discussions encompassed the pervasiveness of the allegedly improper practices, defenses asserted, scope and size of the class, and appropriate methods of providing notice. Ultimately, the discussions yielded a tentative settlement, subject to court approval.

The parties thereafter filed a motion for preliminary approval of the class settlement. The Court granted preliminary approval under Rule 23. The settlement administrator mailed notices on April 30, 2009.[6] The parties now seek final approval of the settlement, which they believe is fair and reasonable and which avoids the ongoing expense and uncertainties of further litigation, trial, and possible appeal. Plaintiff files this brief in support.

### III. Legal Issues

#### a. Framework of the Settlement

During negotiations, the parties determined that the maximum statutory damage in this case was $99,990. After extensive negotiations, the parties agreed

---

[4] *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir 1988); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir 1993).

[5] 15 U.S.C. § 1692k(a)(B).

[6] *Id.*

3

to settle for $48,000 to the class. The settlement terms are set forth in detail in the Settlement Agreement, attached as an exhibit to Plaintiff's Motion for Preliminary Approval.[7]

The settlement reached is one that class counsel believes is very favorable. The settlement provides substantial benefits to the Class in the following respects:

(a) $48,000.00 aggregate payment to the Class members who submitted claim forms. This will yield approximately $20.13 for each of the 2,384 claiming class members;

(b) Defendants have funded or agreed to fund administration expenses, including compiling the class list, preparing and mailing the notices, and covering the costs of issuing and mailing checks, etc. Class counsel has administered the class settlement, fielding communications from the class members;

(c) Defendants have agreed to pay Plaintiff's attorney fees, litigation expenses, and costs up to $34,000.00, subject to the Court's approval; and

(d) The named Plaintiff, James Meselsohn, will receive $3,000 for his individual statutory damages and his participation in this litigation.

Defendants have denied liability to the representative Plaintiff and the Class. Defendants join in this request for final approval of this settlement Class. Plaintiff now seeks final approval of this settlement, together with an award of his attorney fees and costs.

---

[7] Pacer Document 50.

### b. Administration and Class Notice

Under the Order granting preliminary approval, the Settlement Administrator printed 81,755 class notices.[8] Class counsel and defense counsel "signed off" on the notice form to be mailed out.

The approved class notice was sent by first class mail. It informed class members of the proposed settlement and the opportunity to claim into the settlement fund for their *pro rata* share. The notice also informed class members that they had the right to exclude themselves from the class or object up until June 30, 2009 and July 9, 2009, respectively.

The Settlement Administrator advises that 81,755 notices were sent out, and 28,228 were returned as undeliverable.[9] Upon final approval of the settlement, each consumer claimant can expect to receive a check of approximately $20.13 ($48,000 settlement fund divided by 2,384 claim forms). Given that no "actual damage" was alleged, Plaintiff submits that this is an excellent result in statutory damages to the Class. Because the settlement represents half of the maximum class recovery as agreed by the parties, it is well within the "range of reasonableness" for final approval.

---

[8] *See* Affidavit of Michael Caines regarding Mailing of Class Notice, sworn on July 22, 2009.

[9] *Id.*

Of the 2,384 claim forms that were returned to the Class Administrator, 99 of them presented some irregularity.[10] Despite this, Plaintiffs' counsel recommends that all returned forms be included in the settlement. These 99 class members will have their rights extinguished by this settlement. If settlement checks are not written for these members, there will likely be disputes over their claims in the future.

After investigation and telephone conversations with as many of the signatories as possible, Plaintiffs' counsel was able to determine the cause of the 99 irregularities. The following is a list of the categories for these forms with specific recommendations for each:

Thirty-two forms are signed by the parent or guardian of the named class member because, as indicated on the claim form, the class member is a minor.

- Plaintiffs' counsel recommends that settlement checks be made out to the parent/guardian signatories. If the name of the parent/guardian is illegible, the check should be made out to the class member listed in the Administrator's records. The underlying debts in this litigation were allegedly incurred for medical services. The parent/guardian should have been identified as the potential class member in the first instance. As is often the case in medical debt collection, however, children who received the underlying medical services are incorrectly listed and billed as

---

[10] *Id.*

debtors. If the settlement check is made out to the parent/guardian, the proper person is being included as a class member. If it is not possible to identify the parent/guardian's name, then a check made out to the minor will result in, at best, a deposit into an account for the child. At worst, it will result in an unclaimed check that will augment the amount of the Cy-pres award.

Thirty forms are signed by a surviving spouse/relative or executor of a deceased class member.

- Plaintiffs' counsel recommends that settlement checks be made out to the executor or surviving spouse/relative signatories. If the name of the signatory is illegible on the claim form, then the check should be made out to the class member listed in the Administrator's records. The results will be similar to those described above regarding minors and parents.

Two forms are signed by the husbands of living class members because the signatories were under the mistaken impression that they could sign for their wives.

- Plaintiffs' counsel recommends that a settlement check be made out to the class member listed in the Administrator's records. Although the spouses were mistaken, the couples expect to participate in the settlement, and they did send in a claim form indicating as much.

7

One form is signed by the legal guardian for an incapacitated person – the signatory attached a court order appointing her to the guardianship.

- Plaintiffs' counsel recommends that a settlement check be made out to the legal guardian, because she is duly authorized to collect the money on behalf of the incapacitated class member.

Twelve forms are signed by someone other than the class member with no explanation regarding the signatory's relationship to the named class member.

- Plaintiffs' counsel recommends that settlement checks be made out to the class member listed in the Administrator's records.  If the recipient requires the check to be made in a different name, the recipient can contact the administrator to explain that need.

Four forms present confusing information about the identity of the signatory and give no indication of the signatory's relationship to the named class member.

- Plaintiffs' counsel recommends that settlement checks be made out to the class member listed in the Administrator's records.  If the recipient requires the check to be made in a different name, they can contact the administrator to explain that need.

Eighteen forms are incomplete because they fail to include a signature, address confirmation, or check mark in the box indicating a desire to participate in the settlement.

- Plaintiffs' counsel recommends that settlement checks be made out to the class member listed in the Administrator's records. Although the form may be missing one, or even all, of the items noted above, the fact that the recipient returned it indicates an interest in participating in the class. For the sake of finality it would be best to allow all class members who returned a claim form to participate in the settlement.

### c. Factors Bearing on Final Approval

The Second Circuit has enumerated nine factors, known as the *Grinnell* factors, to guide courts in evaluating the fairness of a proposed settlement:

> (1) The complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.][11]

At the same time, the Courts "must take a liberal rather than a restrictive approach in determining whether plaintiff satisfies [the] requirements" for class

---

[11] *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).

certification.[12] The law "favors settlement of class actions" just as in other cases.[13] The central question raised by the proposed settlement of the class action is that the compromise is fair, reasonable, and adequate.[14]

### i. The Complexity, Expense and Likely Duration of the Litigation

Plaintiff submits that the complexity, expense and likely duration of the litigation weigh in favor of final approval. Although not particularly complex factually, this case raises a number of substantial legal questions that would need to be resolved. Specifically, the court would have to determine whether Plaintiff's allegations that Defendant violated the FDCPA by sending debt-collection letters to consumers without complying with the FDCPA's requirements have merit. Litigation of this issue could have taken months or years, and consumed a substantial amount of litigant and judicial resources.[15] Moreover, aggregating all possible FDCPA claims based on the form collection letter will eliminate the potential for "repetitious litigation" and "inconsistent adjudications" if the claims

---

[12] *Steinberg v. Nationwide Mutual Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004).

[13] *In re: Toys R Us Antitrust Litigation*, 191 F.R.D. 347, 350 (E.D.N.Y. 2000).

[14] *Id.*, citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

[15] *See Aramburu v. Healthcare Financial Services,* 02-CV-6535 (MDG), WL 1086938, *3 (E.D.N.Y. April 22, 2009) ("…[S]ettlement provides certain compensation to the class members now rather than awaiting an eventual resolution that would result in further expense without any definite benefit"); *In re: General Motors Pick-Up Truck Litigation*, 55 F.3d 768, 812 (3d Cir. 1995) (Defendants' opposition and number of significant legal issues are elements favoring settlement, which avoids delay and offers immediate payment).

were brought separately[16] and which otherwise "might stand in the way of a beneficial comprehensive settlement."[17]

### ii. Reaction of the Class to the settlement

The reaction of the Class to the settlement has been positive. There are no objections from any class members.[18] Moreover, of the 81,755 class notices mailed, no class members have opted out.[19] The absence of any objections or exclusion requests tips "heavily in favor of a strong presumption of fairness."[20]

### iii. The stage of the proceedings and the amount of discovery completed

The parties, through counsel, engaged in protracted informal discovery to determine the class size and other key information needed to move for class certification and judgment or settle.

### iv. The risk of establishing liability and damages

Although Plaintiff believes liability to be strong, Defendant denies it. If tried, Plaintiff would bear the burden of establishing that the disclosures made in Defendant's debt-collection letters were not made in accordance with the FDCPA.

---

[16] *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citation omitted).

[17] *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 32-33 (E.D.N.Y. 2006).

[18] *See* Affidavit of Michael Caines regarding Mailing of Class Notice, sworn on July 22, 2009.

[19] *Id.*

[20] *See In re: Rite Aid Securities Litigation*, 269 F.Supp. 2d 602, 608 (E.D. Pa. 2003); *also see Aramburu*, 2009 WL 1086938 at *4 (The fact that no class members opted out or objected weighs in favor of approval).

Defendants vigorously deny any wrongdoing, have asserted numerous defenses and maintain that the letter that is the subject of this case complies in all respects with the FDCPA .

But Plaintiff believes that the greater risk in cases such as this is the damages cap and establishing damages. The parties agree that Defendants' potential liability here is $99,990. The law on determining the maximum statutory damages for purposes of the FDCPA is anything but clear.[21] There is a divergence among the Circuit Courts concerning the items that can be considered in determining the maximum statutory damage.[22] And no one has litigated the question of what to do when there is disagreement as to these various factors. Litigating these issues would undoubtedly delay a payout to the class members, and it may not be worth the added time and expense. Therefore, the parties have settled upon $48,000.

Finally, the agreed maximum damage in this case reflects the statutory ceiling, and is not to be applied mechanically. That is, a jury would be free to find that the violation here is not worth the full maximum statutory damages, but only a third of that or even less. Here, $48,000 for a class, on a claims-made basis, is about 48% of the maximum statutory damages as represented by Defendant. It is an

---

[21] *Compare Sanders v. Jackson*, 209 F.3d 998, 999 (7th Cir. 2000) (holding that the "net worth" should be calculated….based on the "book value of the company…") *with Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259, 261 (E.D.Pa. 2004) (including "equity, capital stock, and goodwill into the calculation of a company's net worth…").

[22] *See e.g. Wisneski*, 227 F.R.D. at 261.

excellent result and avoids disputes and uncertainty over establishing statutory damages.

### v. The risks of maintaining the class action through the trial

During trial, the unexpected does happen and must be taken into account: class representatives sometimes move out of the jurisdiction and one of Plaintiff's attorneys even had a class representative pass away before having an opportunity to move for class certification. Although Plaintiff's attorneys met at length with Plaintiff Meselsohn and Plaintiff's attorneys believe that he is in good health and makes an excellent class representative who would easily pass muster in a contested class certification motion, the vagaries of litigation must be taken into account in evaluating a settlement's reasonableness.

### vi. The ability of Defendants to withstand a greater judgment

With the current economic crisis there is some uncertainty in the credit card and debt-collection industries. Many large debt-buying and debt-collection firms are posting lower profits and even losses. And Plaintiff's counsel has litigated against a number of debt-collection law firms that have recently closed their offices. Therefore, obtaining a recovery now, through settlement, is certainly preferable to the possibility of queuing up with other unsecured creditors in the event these industries melt down. (Plaintiff knows little of Defendants' business operations and is in no way implying or suggesting that Defendants are facing economic problems greater than those facing the consumer credit and collection industries in general.)

> vii. The range of reasonableness of the settlement in light of the best possible recovery in light of all the attendant risks; opinions of class counsel

This factor also weighs toward settlement. There were no actual or economic damages pled or proven, only statutory damages. Defendant agreed to pay about half of the maximum statutory damages it claims are awardable. Thus, even if Plaintiff were to win on a motion for contested class certification (and any interlocutory appeal from class certification), win on liability, win at trial (and any appeal from final judgment) for the maximum recovery, he and the Class might still not recover the maximum statutory damages. And a jury might take a less robust view of the case than Plaintiff has, and award even less than $48,000.[23]

Defendants agreed to this settlement for economic reasons and to avoid the burdens of litigation and possible appeals without a specific admission of wrongdoing. Nevertheless, it resulted in Plaintiff and the Class achieving through settlement an excellent recovery. In addition to the recovery for the Class, class counsel also negotiated for Defendants to pay all administrative costs, and class counsel fees and costs. (Class counsel fees and costs were neither discussed nor negotiated until after the parties had reached agreement on the recovery to the class.)

For these reasons, the settlement is reasonable, indeed favorable, and class counsel has endorsed it.

---

[23] *See Aramburu*, 2009 WL 1086938 at *5 (The value of obtaining certain compensation quickly weighed against the significant risk of a smaller jury verdict, places settlement within the range of reasonableness).

### d. Attorney fees and costs

Plaintiff seeks an award of $34,000 to compensate counsel for services rendered to the Class, and their costs. Plaintiff seeks reimbursement under the fee-shifting provisions of the FDCPA.[24] This sum was negotiated separately, after the parties had already agreed upon the recovery to the Class and the award to the class representative, and is payable from Defendant, *not* from the settlement fund.

It is well settled that a consumer successfully bringing an action under FDPCA is entitled to attorney fees. In approving attorney fees in class-action settlements, courts in this circuit consider the following factors:

> (1) Time and labor expended by counsel; (2) magnitude and complexity of the litigation; (3) risk of the litigation; (4) quality of the representation; (5) requested fee in relation to the settlement; and (6) public policy considerations.[25]

Here, Plaintiff seeks fees under the lodestar formula for statutory fee cases. Under the lodestar analysis, counsel fees are awarded by multiplying the number of hours reasonably spent litigating the matter by counsel's hourly rate. This yields a presumptively reasonable fee. Plaintiff is e-filing certifications today as to the time spent and costs incurred by class counsel in litigating this case. (These certifications will not, of course, reflect time for appearing at the Final Approval

---

[24] 15. U.S.C. § 1692k.

[25] *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 746-47 (S.D.N.Y. 1985).

Hearing or responding to questions from class members after distribution of the settlement proceeds.)

      e. **Award to representative Plaintiff**

Plaintiff requested, and Defendants have agreed, to a modest $3,000 award to the representative Plaintiff. He took time off from work to meet with class counsel, assisted with the case, appeared in court for a lengthy settlement conference, and kept apprised of case status and developments. Such an award is both reasonable and of the type commonly approved.[26] Neither fees nor representative award will deplete the settlement fund.

## IV. Conclusion

Plaintiff moves the Court for an Order granting final approval of the class-action settlement, approving class counsel fees and costs in the amount of $34,000, and approving a $3,000 award to the class representative.

Dated:     New York, New York
               July 22, 2009

                                    Respectfully Submitted,

                                    By: /s/ Brian L. Bromberg
                                       Brian L. Bromberg
                                       Bromberg Law Office, P.C.
                                       40 Exchange Place, Suite 2010
                                       New York, NY 10005
                                       (212) 248-7906

---

[26] *See* Aramburu, 2009 WL 1086938 at *5; *In re: Marine Midland Motor Vehicle Leasing Litigation*, 155 F.R.D. 416 (W.D.N.Y. 1994).

## Certificate of Service

I, Brian Bromberg, an attorney, hereby certify that on July 22, 2009 the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Lance A. Raphael lance@caclawyers.com

Brian L. Bromberg brian@brianbromberg.com

Kevin Schlosser kschlosser@msek.com

Joseph Mauro JoeMauroesq@hotmail.com

Robert C. Angelillo rangelillo@msek.com

Stacy M. Bardo stacy@caclawyers.com


Dated: New York, New York
       July 22, 2009

                              /s/ Brian L. Bromberg
                                  Brian L. Bromberg

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005

725353